FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA    OCT 23   AM 9:50
JACKSONVILLE DIVISION

| | |
|---|---|
| Hexuan Cai, | ) |
| Plaintiff, | ) |
| | ) Case No. 3:13-CV-1277-J-32TEM |
| vs. | ) |
| | ) |
| Cerulean Studios, LLC, | ) |
| Defendant. | ) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Hexuan Cai ("Cai"), by and through his undersigned attorneys, alleges against Cerulean Studios, LLC ("Cerulean Studios"), as follows:

### NATURE OF THE CASE

This is an action for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v), seeking injunctive and declaratory relief.

### INTRODUCTORY STATEMENT

Defendant Cerulean Studios filed a Uniform Dispute Resolution Policy ("UDRP") complaint before the WIPO Arbitration and Mediation Center, which resulted in a single-member arbitration panelist ordering the transfer of the domain name <trillian.com> from its current registrant, Plaintiff Hexuan Cai, to Defendant. See *Cerulean Studios, LLC v. Hexuan Cai*, WIPO Case No. D2013-0902, a true and correct copy of which is submitted herewith as Exhibit A. Notwithstanding that arbitration decision, the initial registration of the

<trillian.com> domain name occurred in 1995, some 16 years before the TRILLIAN service mark was registered by Defendant with the United States Patent and Trademark Office ("USPTO") and 5 years prior to the time Defendant alleges that it commenced use of the TRILLIAN service mark. In December 2012, the <trillian.com> domain name was re-registered by Plaintiff Cai in good faith at a public auction after it nearly expired and lapsed. Plaintiff Cai acquired the <trillian.com> domain name registration for the purpose of marketing the name in connection with agricultural food products in Chinese markets and over the Internet.

Now, a business entity from an entirely different part of the world, selling services completely unrelated than the class of agricultural products sold by Plaintiff, has decided that it covets the <trillian.com> domain name. Undeterred by the fact that Plaintiff Cai expended a significant sum of money and resources for the registration of <trillian.com>, and that Defendant has no legitimate basis for claiming bad faith, Defendant has attempted to invent one – falsely asserting to a domain name dispute arbitration panel that Cai has acted with some nefarious purpose. Unfortunately, under the relaxed evidentiary standards for the arbitration proceedings before the WIPO Arbitration and Mediation Center, Defendant's unfounded speculation that Cai was acting as a bad-faith purchaser having no legitimate rights to the TRILLIAN mark succeeded, even though it did not introduce any admissible proof to support Defendant's position.

If left to stand, Defendant's actions, which constitute reverse domain name hijacking, threaten to rob Cai of tens of thousands of dollars spent in market research, domain name acquisition fees and branding efforts. Fortunately, the United States Congress has foreseen

the potential for this type of injustice and provided a statutory mechanism whereby this Court can stay the hijacking of <trillian.com>. Cai hereby invokes that mechanism and brings this complaint seeking to retain ownership of his rightfully obtained online property.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action because: (i) it involves a federal question; (ii) it involves a federally registered service mark; and (iii) it requires a declaration of rights and other legal relations. *See* 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."); and 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

2. Venue is proper in the United States District Court for the Middle District of Florida because Defendant expressly consented to such jurisdiction. Paragraph 3(b) (xiii) of the Rules for Uniform Domain Name Dispute Resolution Policy, which Defendant (also referred to herein as the "UDRP Complainant") provided for in its original complaint against Plaintiff Cai (also referred to herein as the "UDRP Respondent") provided that "Complainant will submit ... to the jurisdiction at the location of the principal office of the Registrar, Network Solutions, in Florida." See Defendant's UDRP Complaint, a true and correct copy of which is submitted herewith as Exhibit B.

## THE PARTIES

3. Plaintiff Cai is the owner of several businesses including Agrinoon (Fujian) Ecological Agriculture Company Limited, a corporation incorporated under the laws of the People's Republic of China ("Agrinoon"). Agrinoon is an agricultural firm that farms, manufactures, sources, processes, and distributes food products such as edible mushrooms, organic vegetables, as well as several local specialty agricultural products.

4. Plaintiff Cai has been operating his agricultural business in China since 2009 and over the Internet since 2012. Agrinoon farms in the southeastern region of China where the climate is most suitable for mushroom cultivation.

5. Defendant is Cerulean Studios, LLC, a Delaware LLC, with its principal place of business in Connecticut, United States. According to Defendant's claims in its UDRP Complaint, Defendant is a software development company that creates instant messaging applications.

## ALLEGATIONS COMMON TO ALL CLAIMS

6. Plaintiff Cai owns and operates a successful agricultural business in China. Over the years, the business has expanded into international markets, and Cai began to look for new brand names to use in connection with the offer and sale of the Agrinoon food products wherein he intended to adopt trademarks that would attract foreign customers to his products.

### *Plaintiff's Trademarks*

7. In exploring potential brand names for his agricultural food products, Plaintiff Cai decided on using several different branding strategies primarily with the use of design

marks to convey different brands such as LAOGUBO and TRILLIAN. The design marks include literal text elements in their design images, such as:

**Trillian** 

With a distinct brand awareness in the market and sale of agricultural food products, Cai has developed an overall effective marketing strategy.

8. As is common practice in China, Cai adapts the Chinese characters for each brand for representation as a domain name using the phonetic equivalent spelled out in the Latin alphabet. Accordingly, the pronunciation of Cai's brand "萃莲" is the same as the pronunciation of the word "TRILLIAN." In Chinese language, "萃" is a commendatory term which means "nice collecting"; and "莲" means "lotus." When combined, "萃莲" as a whole is a coined and unique word and serves as a distinctive brand.

9. While evaluating branding strategies, Plaintiff Cai sought to procure the domain name registrations corresponding to use his frontrunner trademarks including "TRILLIAN."

10. Cai determined the candidate "TRILLIAN" to have the most marketing appeal for his food products, and accordingly he decided that this brand, trademark, and domain name would provide the most advantageous brand recognition, degree of uniqueness, and most memorable association for those seeking to find his agricultural based food products.

### *Registration and Use of the Hijacked Domain Name*

11. Having decided upon the use of the TRILLIAN trademark for his agricultural products, Cai sought to register <trillian.com> but was quickly disappointed to find that another registrant had already registered the domain name long before he attempted to obtain it.

12. Undeterred in his quest to brand his food items with the TRILLIAN mark, in November 2012, when the domain name came up for auction, Plaintiff submitted a US$7,599 bid to purchase the domain name <trillian.com> from the auctioneer who maintained the domain name registration for sale as the prior registrant had allowed the domain name registration to lapse.

13. While Plaintiff found the US$7,599 price tag to be daunting, given the expensive preparations and expensive marketing that Plaintiff had engaged in and planned to engage in, it was seen as a reasonable cost. Cai's bid to purchase the <trillian.com> domain name registration was successful, and it was eventually transferred into his name on December 28, 2012.

14. While in preparation of receiving the domain name <trillian.com>, Cai decided to expend additional resources to set up an e-commerce site at <xu.com>[1] to market and sell his entire portfolio of branded food products, including goods bearing the TRILLIAN brand.

---

[1] In Chinese language, "XU" corresponds to the character "圩," which literally means "farm market."

15. Plaintiff has always maintained his desire to utilize the name TRILLIAN as an international brand in association with agricultural food products, and presently continues to work toward this goal.

16. Plaintiff has begun use of the TRILLIAN name in the local Chinese market while seeking more international consumer interest in the agricultural products that will bear that brand name.

17. Plaintiff announced his brand names publicly, and intends to utilize the TRILLIAN trademark in conjunction with his website at <trillian.com> when the development of the website is complete for that domain name. Announcing a new brand in connection with a tangible success in the marketplace is a common "launch strategy" in public relations. As such, the business had and has little need for a website until the preliminary development work is complete. In fact, a prematurely launched website could prove detrimental to the Plaintiff's marketing strategy.

18. A considerable amount of time and money has been invested in developing the TRILLIAN brand name and procuring the corresponding domain name registration. Plaintiff has not changed his plan to launch a commercial website on <trillian.com>, and the domain name is not for sale.

19. In the meantime, Plaintiff has maintained registration of <trillian.com>, which incorporates the chosen TRILLIAN name in full, anticipating a public launching featuring the agricultural products sold under that name and the corresponding website to market them.

Complaint

20. Between February 2013 until May 2013 the <trillian.com> domain name remained parked at a "splash page"[2], first by the domain name's registrar, Network Solutions, from December 28, 2012, to February 14, 2013, and thereafter by the Plaintiff's preferred Domain Name System ("DNS") service provider, DNS Link. The splash pages provided by Network Solutions and DNS Link included third-party advertisements chosen entirely by Network Solutions and DNS Link. Plaintiff did not derive any revenue from the advertisements placed by Network Solutions or DNS Link on the splash pages, nor did Plaintiff have any control whatsoever over the advertisements that appeared on the splash pages. Thereafter, Plaintiff redirected the domain name to <xu.com>, where it currently populates.

### *The UDRP Action Against the Hijacked Domain Name*

21. Defendant is owner of a service mark registration for "TRILLIAN" for use in association with International Class 9 ("Downloadable computer software for accessing, creating and transmission of instant messages, e-mail and voice over Internet protocol communications; downloadable computer software for accessing and using electronic social networks") and Class 38 ("Instant messaging services"). *See* U.S. Service Mark Reg. No. 85,278,132.

22. On May 22, 2013, Defendant filed a UDRP complaint against Plaintiff before the WIPO Arbitration and Mediation Center ("WIPO"), asserting that Cai had registered and used <trillian.com> in bad faith. Defendant further alleged as fact that Cai had no legitimate use or interest in the TRILLIAN mark. Although Defendant attached hundreds of pages of

---

[2] A "splash page" is the first page that appears when a website is visited. *Chambers v. Time Warner*, 2003 U.S. Dist. LEXIS 3065, 2003 WL 749422, at *7 (S.D.N.Y. Mar. 5, 2003).

documents to its UDRP complaint, the majority of papers consisted of media evaluations of Defendant's software and user feedback and comments about the software (as two commenters warned, "Full of Adware" and "Badly designed, temperamental, unreliable"). Defendant failed to file any admissible evidence that would support its untruthful statements attacking Cai's credibility, nor could the Defendant non-perjuriously do so. See Exhibit B.

23. On June 18, 2013, Plaintiff prepared and filed a response to Defendant's complaint with WIPO, refuting its allegations of bad faith and accurately setting forth the facts surrounding Cai's registration and use of <trillian.com>, which has never interfered with Defendant's rights. A true and correct copy of Plaintiff Cai's response to Defendant's complaint is submitted herewith as Exhibit C.

24. Plaintiff was without knowledge of the US-based TRILLIAN service mark until he was served with the UDRP complaint in May 2013.

25. Importantly, Plaintiff's business is in food products. It is not a service provider. It does not sell instant messaging services or any software. Despite the fact that Plaintiff Cai does not compete with Defendant, the lack of any evidence that Cai had engaged in bad-faith registration or use of <trillian.com>, and the fact that the domain name <trillian.com> was registered nearly 16 years before the Plaintiff's TRILLIAN service mark was registered at the USPTO, a single-member panel erroneously decided in favor of Defendant on October 7, 2013, and ordered <trillian.com> be transferred away from Plaintiff.

26. The <trillian.com> domain name is now pending transfer to Defendant, as the result of this erroneous domain dispute decision from the WIPO Arbitration Center.

27. The Court is not bound by the arbitrator's decision in any way.

28. According to its domain name dispute procedure, Network Solutions, LLC has delayed transferring <trillian.com> to the Defendant until after ten (10) business days have passed from notice of the arbitration decision on October 10, 2013, providing Plaintiff an opportunity to file this action and contest the panel's finding by October 23, 2013.

29. Although the <trillian.com> domain name has not yet been transferred away from Plaintiff, the instant action is ripe for review by this Court, because such transfer is inevitable absent further action by Plaintiff[3] and because the domain name will be transferred to Defendant absent a properly noticed appeal.

30. Plaintiff asserts that <trillian.com> should not be transferred to the Defendant.

## FIRST CLAIM FOR RELIEF
*(Reverse Domain Name Hijacking – 15 U.S.C. § 1114(2)(D)(v))*

31. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

32. Through passage of the Anticybersquatting Consumer Protection Act (the "ACPA"), Congress amended 15 U.S.C. § 1114 to establish a right of relief against an overreaching trademark owner seeking to take ownership of domain names that have not been registered or used in violation of the trademark owner's rights. This practice is colloquially called "reverse domain name hijacking."

33. The Internet Corporation for Assigned Names and Numbers ("ICANN"), the organization responsible for promulgating the UDRP, defines reverse domain name hijacking

---

[3] *See, e.g., Sallen*, 273 F.3d at 25, n.11 (noting that a complaint under 15 U.S.C. 1114(2)(D)(v) is properly brought where transfer of the disputed domain name is inevitable following an arbitration decision).

as "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain name."[4]

  34. Section 1114 states, in pertinent part, that:

> [a] domain name registrant whose domain name has been suspended, disabled, or transferred under [the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).

  35. To prevail on a reverse hijacking claim, Plaintiff must show that: (i) Cai is the domain name registrant for the <trillian.com> domain name (the "Hijacked Domain Name"); (ii) the Hijacked Domain Name was suspended, disabled, or transferred under Network Solution's domain dispute resolution policy; (iii) the UDRP Complainant (i.e., Defendant) has notice of this action by service or otherwise; and (iv) Plaintiff's registration or use of the Hijacked Domain Name is not unlawful under the ACPA.

  36. Plaintiff can demonstrate each of the four requirements to prevail in this reverse hijacking claim.

*Plaintiff is the domain name registrant.*

  37. Plaintiff Cai is the current owner of the Hijacked Domain Name.

  38. Plaintiff Cai has been the registrant of the Hijacked Domain Name continuously since December 28, 2012. His name, email address and contact information are

---

[4] UDRP Rule 1, available at http://www.icann.org/en/dndr/udrp/uniform-rules.htm (last visited October 21, 2013).

listed in the current WHOIS record for the domain name. A true and correct printout of the WHOIS record for the domain name as of October 21, 2013, has been submitted herewith as Exhibit D.

### *The Hijacked Domain Name was suspended, disabled, or transferred under Network Solutions' domain dispute resolution policy.*

39. On May 22, 2013, the UDRP Complainant (*i.e.*, Defendant) submitted a domain name dispute complaint to a qualified arbitrator, in accordance with Network Solutions' domain name dispute resolution policy.

40. Despite the fact that the UDRP Complainant / Defendant failed to show that Plaintiff had registered or used the Hijacked Domain Name in bad faith, a single-member panel decided that <trillian.com> should be transferred away from Plaintiff.

41. The Hijacked Domain Name is subject to imminent transfer as a result of the improper UDRP decision.

### *The UDRP Complainant has notice of this action by service or otherwise.*

42. Contemporaneous with the filing of this Complaint and its Exhibits with the Court, Plaintiff's attorney has provided notice of the same by email upon the UDRP Complainant, its attorney, and the sponsoring registrar for the Hijacked Domain Name, Network Solutions, LLC.

43. This Complaint, its exhibits, and a properly issued Summons, shall be served upon Defendant in due course.

*Neither Plaintiff's registration, nor his use of the
Hijacked Domain Name is unlawful under the ACPA.*

44. Plaintiff has neither registered nor used the Hijacked Domain Name in bad faith.

45. Congress has provided a number of guidelines for determining whether a party has registered, used, or trafficked in a domain name with bad faith. *See* 15 U.S.C. § 1125(d)(1)(B)(i). More specifically, "[i]n determining whether [Plaintiff has] a bad-faith intent [sufficient to justify forfeiture of the domain name in question], a court may consider factors such as, but not limited to:

   I. the trademark or other intellectual property rights of [Plaintiff], if any, in the [Hijacked Domain Name];

   II. the extent to which the [Hijacked Domain Name] consists of the legal name of [Plaintiff] or a name that is otherwise commonly used to identify [Plaintiff];

   III. [Plaintiff's] prior use, if any, of the [Hijacked Domain Name] in connection with the bona fide offering of any goods or services;

   IV. [Plaintiff's] bona fide noncommercial or fair use of [TRILLIAN] in a site accessible under the [Hijacked Domain Name];

   V. [Plaintiff's] intent to divert consumers from the [UDRP Complainant]'s online location to a site accessible under the [Hijacked Domain Name] that could harm the goodwill represented by [TRILLIAN], either for commercial gain or with the intent to tarnish or disparage [TRILLIAN], by

            creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI.    [Plaintiff's] offer to transfer, sell, or otherwise assign the [Hijacked Domain Name] to the [UDRP Complainant] or any third party for financial gain without having used, or having an intent to use, the [Hijacked Domain Name] in the bona fide offering of any goods or services, or [Plaintiff's] prior conduct indicating a pattern of such conduct;

VII.    [Plaintiff's] provision of material and misleading false contact information when applying for the registration of the [Hijacked Domain Name], [Plaintiff's] intentional failure to maintain accurate contact information, or [Plaintiff's] prior conduct indicating a pattern of such conduct;

VIII.    [Plaintiff's] registration or acquisition of multiple domain names which [Plaintiff knows] are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX.    the extent to which [the UDRP Complainant's mark] incorporated in [Plaintiff's] domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of [this section]."

15 U.S.C. § 1125(d)(1)(B)(i).

46. Addressing these factors, (I.) Plaintiff has made extensive use of the TRILLIAN mark outside of the U.S., which use is analogous[5] to use in U.S. commerce; (II.) the Hijacked Domain Name consists of the brand name chosen by Plaintiff for his agricultural food business; (III.) Plaintiff's use of the <trillian.com> domain name has been passive, but only in preparation for Cai's intended, future *bona fide* use in connection with the goods sold in China under the TRILLIAN mark prior to Defendant's attempt to hijack the domain name; (IV.) no use has ever been made of Defendant's mark, since Plaintiff is engaged in selling a wholly unrelated class of goods and services; (V.) the disputed domain was previously parked, and now site visitors are being redirected to <xu.com>; (VI.) Plaintiff has never offered to sell or otherwise assign the <trillian.com> domain name to Defendant or any other third party; Plaintiff has clearly demonstrated his intent to use the <trillian.com> domain name in connection with a *bona fide* offering of goods and services that do not compete with Defendant's; (VII.) Plaintiff can be reached through use of the contact information provided in the WHOIS record for the <trillian.com> domain name; Plaintiff has never had any intent to hide his ownership of the <trillian.com> domain name; (VIII.) Plaintiff has never registered any domains which he knows would violates any parties' trademark or other intellectual property rights; and (IX.) Defendant's mark is not famous, and is only demonstrably distinctive in relation to its current use – *i.e.*, in relation to instant messaging services, software for accessing, creating and transmission of instant messages, e-mail and voice over Internet protocol communications; Defendant's mark most certainly

---

[5] "Analogous use" is a term of art in the realm of trademarks which means use of a mark that are insufficient to support a U.S. registration, yet sufficient to create public identification of a term with its putative owner for an intended future commercial use. *See, e.g., Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 20-21 (D.C. Cir. 2008). Market research concerning the usability of an intended mark can be used to show analogous use. *Id.*

lacked any distinctiveness or notoriety of any kind in the locale of where Plaintiff intends to use and are preparing to use the TRILLIAN trademark in connection with agricultural goods.

47. In short, Plaintiff neither registered, trafficked in, nor used the Hijacked Domain Name in any way that violates the ACPA. Although both parties have rights in the underlying mark, Defendant seeks to use its federal trademark registration to hijack the purchase of <trillian.com> by Plaintiff.

48. Plaintiff's registration and use of <trillian.com> are not unlawful under the ACPA, and therefore the Plaintiff has every right to possess and maintain this valuable business asset.

### *Plaintiff is the victim of a reverse domain name hijacking*

49. On October 7, 2013, a single-member arbitration panel erroneously decided that Plaintiff's registration and use of the <trillian.com> domain name were in bad faith, and ordered transfer of <trillian.com> to the UDRP Complainant / Defendant.

50. This arbitration decision is due no deference in this Court.[6] Moreover, in deciding Plaintiff's claims, this Court should perform a *de novo* review of the allegations herein presented.[7]

51. Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiff has no legitimate interest in the

---

[6] *See Weber-Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.*, 2000 U.S. Dist. LEXIS 6335 at *7, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) ("We conclude that this Court is not bound by the outcome of the ICANN administrative proceedings."); *see also Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Broadbridge Media LLC v. Hypercd.com*, 106 F. Supp. 2d 505, 509 (S.D.N.Y. 2000).

[7] *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 31-32 (1st Cir. 2001); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 381 (2d Cir. 2003); *Dluhos v. Strasberg*, 321 F.3d 365, 373 (3d Cir. 2003); *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 386 (4th Cir. 2003); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003); *Parsi v. NetLearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Stenzel v. Pifer*, 2006 U.S. Dist. LEXIS 32397 (W.D. Wash. 2006);

<trillian.com> domain name. On the contrary, Plaintiff's verifiable activities to date not only demonstrate his legitimate interest in the Hijacked Domain Name, but they prove by clear and convincing evidence that Plaintiff has no intention of using the Hijacked Domain Name for an improper purpose.

52. Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiff registered the domain name <trillian.com> with the intent to ransom it for financial gain.

53. These assertions are patently false.

54. Defendant knew that these assertions were patently false when Defendant submitted them to the UDRP panel. However, Defendant desired to possess <trillian.com> for its own purposes, and its desire to possess the domain name despite the Plaintiff's legitimate right to own it, motivated Defendant to knowingly and willfully submit false statements to the UDRP panel.

55. This Court is not bound by the decision of the single-member arbitration panel.

56. Neither Plaintiff nor the original registrant registered the <trillian.com> domain name in bad faith.

57. Plaintiff has never used <trillian.com> in bad faith.

58. Plaintiff has never trafficked in <trillian.com>, nor in any other domain name.

59. The UDRP Complainant / Defendant has overreached its trademark rights and wrongfully asserted a claim to the Hijacked Domain Name.

60. The events described herein constitute reverse domain name hijacking and warrant injunctive relief for Plaintiff under 15 U.S.C. § 1114(2)(D)(v).

61. Plaintiff is entitled to injunctive relief, preventing the UDRP Complainant's reverse hijacking of the <trillian.com> domain name.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

(1) That the Court enter a judgment in favor of Plaintiff and affirming that: (i) Cai is the domain name registrant for <trillian.com>; (ii) <trillian.com> was suspended, disabled, or transferred under Network Solution's domain dispute resolution policy; (iii) Defendant has notice of this action by service or otherwise; and (iv) Plaintiff's registration or use of <trillian.com> is not unlawful under the ACPA.

(2) That the Court issue injunctive relief against enforcement of the UDRP decision of October 7, 2013, which decision ordered transfer of the Hijacked Domain Name away from Plaintiff.[8]

Dated this 22nd Day of October, 2013.

RANDAZZA LEGAL GROUP

_____(Fla Bar. 68762) on behalf of Marc J. Randazza
Marc J. Randazza, Esq.
Florida Bar No. 027861
Randazza Legal Group
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tel. (888) 667-1113
Fax (305) 437-7662
ecf@randazza.com

*Attorney for Plaintiff*

---

[8] Plaintiff has neither sought damages nor an attorneys' fees award in this complaint. However, Plaintiff reserves the right to amend this complaint to seek such relief.